# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ex rel. PEDRO GARCIA, ) ) ) | |
| Petitioner, ) ) | |
| v. ) ) | No. 04 C 7613 |
| NEDRA CHANDLER, Acting Warden, ) ) | Judge Rebecca R. Pallmeyer |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

On July 9, 1998, a Cook County, Illinois jury found Petitioner Pedro Garcia guilty of possession of a stolen motor vehicle. Judge Dennis J. Porter sentenced him as a recidivist to 30 years in prison. On or about November 23, 2004, Petitioner filed a petition for habeas relief, asserting the one claim that he has fully exhausted in the State courts – i.e., that he was denied the right to counsel of his choosing in violation of the Sixth Amendment. Recognizing that Petitioner has additional claims still pending in the State courts, Respondent Nedra Chandler, Acting Warden of Dixon Correctional Center where Petitioner is incarcerated, moved to dismiss the habeas petition with leave to re-file after Petitioner exhausted all of his State court remedies. On February 23, 2005, Petitioner advised the court that he wanted to proceed with his choice of counsel claim and that he "understands that he will be forfeit[ing] any challenge to those claims still pending in state court." (Petitioner's Response to State's Motion to Dismiss, at 1-2.) Accordingly, the court now addresses the merits of Petitioner's petition and, for the reasons stated here, denies the request for habeas relief.

## BACKGROUND[1]

At 8:15 in the morning on January 15, 1998,[2] Silverio Arellano started the engine of his car and left it running in his garage at 2952 North Springfield in Chicago, Illinois while he shoveled snow from his gangway. (*People v. Garcia*, No. 1-99-0752, (Ill. App. Ct. Mar. 29, 2002), Exhibit A to Respondent's Answer, at 1; State's Brief in Opposition to Direct Appeal, at 3.) Approximately ten minutes later, Arellano's wife saw the car being driven away and, after Arellano confirmed that the car was gone, he called the police to report the theft. Neither Arellano nor his wife actually saw who took the car. (*Id.*) Two hours later, Petitioner drove Arellano's car toward Isaias Aburto, who was shoveling snow behind a food market where he worked at 3647 West Diversey in Chicago. (*Id.* at 2; State's Brief in Opposition to Direct Appeal, at 4.) Petitioner put a gun in Aburto's back and demanded money. When Aburto realized that the gun was plastic, he elbowed Petitioner and they scuffled on the ground until Petitioner ran away. (*Id.*) Aburto reported the incident to his employer, who called the police. Aburto provided a description of his assailant to the police who arrived at the scene, and when the police brought Petitioner to the food market a short time later, Aburto identified him as that assailant. (*Id.*)

---

[1] A federal court reviewing a petition for writ of habeas corpus under 28 U.S.C. § 2254 presumes the state court's factual findings are correct. 28 U.S.C. § 2254(e)(1); *see also Sumner v. Mata*, 449 U.S. 539, 547 (1981). A petitioner has the burden of establishing by convincing evidence that a state court's factual determinations are erroneous. *See United States ex rel. Green v. Greer*, 667 F.2d 585, 589 n.6 (7th Cir. 1981). Petitioner does not challenge the Illinois Appellate Court's factual findings and, thus, the court adopts them here. (*People v. Garcia*, No. 1-99-0752, (Ill. App. Ct. Mar. 29, 2002), Exhibit A to Respondent's Answer.) *See also People v. Garcia*, 328 Ill. App. 3d 1087, 817 N.E.2d 219 (Table) (1st Dist. 2002).

[2] The Illinois Appellate Court's opinion states that the incidents leading to Petitioner's arrest occurred on December 15, 1998, but the parties' memoranda before that court both reflect a date of January 15, 1998. (*See* Petitioner's Brief on Direct Appeal, Exhibit B to Respondent's Answer, at 4; State's Brief in Opposition to Direct Appeal, Exhibit C to Respondent's Answer, at 3.)

2

A.  **The Pretrial Hearings**

During the criminal proceedings relating to these incidents, Petitioner was represented by private counsel, Sidney Novit, who filed and presented pretrial motions and demanded trial at each of the five court hearings between April 8 and June 29, 1998. On each occasion, however, the State was not ready to proceed, apparently due to the absence of its eyewitness, Aburto. (*Id.*; State's Brief in Opposition to Direct Appeal, at 4.) At a hearing on June 29, 1998, Novit again demanded trial and advised the court that he would file a motion to dismiss the case if the State's witness, Aburto, did not appear. (*Id.*) Also at that hearing, attorney Eric Puchala notified the court that he would be appearing as co-counsel on behalf of Petitioner. The State requested a continuance to secure the presence of Aburto, who was a citizen of Mexico, and the court continued the trial for one week despite Novit's renewed demand for trial. (*Id.*)

On July 7, 1998, the court called Petitioner's case for trial and Novit again announced that he was prepared to proceed. (*Id.*; Transcript attached to Habeas Petition, at C-3.) Novit then asked whether the State's witness was present and pressed for an opportunity to see and interview him. (*Id.*; Transcript, at C-3 - C-8.) When the State brought Aburto into the courtroom, Novit for the first time made an oral request for leave to withdraw, explaining that Petitioner's family had hired another attorney, Puchala, to represent him. (*Id.* at 3; Transcript, at C-8.) Puchala, however, was not present in court and Novit did not know where to find him. The court reminded Novit that the case was set for trial and that he had repeatedly demanded trial over several months. Novit asked for a continuance, noting that unlike the State, he had never before requested one. Novit also informed the court that he had not been paid for his services and that he was in court that day only to ensure that Petitioner's speedy trial rights were not violated. (*Id.*; Transcript, at C-8 - C-10.)

The court denied the continuance but passed the case to allow Novit time to locate Puchala. When the case was recalled, Novit advised the court that he had called Puchala's office and heard

3

a recorded message stating that Puchala was out of town. (*Id.*; Transcript, at C-9 - C-10, C-14 - C-15.) Petitioner himself spoke up at this point, explaining that he had fired Novit and hired Puchala on June 8, 1998, but that he did not know where his new attorney was that day. (*Id.*; Transcript, at C-16 - C-17.) The court stated its objection to the "gamesmanship" from Petitioner and Novit, opining that the defense had been counting on the State's inability to produce Aburto. (*Id.* at 4; Transcript, at C-19 - C-20, C-24.) The court found Petitioner's request for a continuance to be a delay tactic and ordered the case to proceed to trial. (*Id.*; Transcript, at C-24 - C-26.)

B.  **The Verdict and Sentence**

On July 9, 1998, a jury found Petitioner guilty of possession of a stolen motor vehicle. For purposes of this habeas petition, Petitioner does not question the sufficiency of the evidence to sustain that verdict. On November 17, 1998, the court sentenced Petitioner to 30 years in prison, noting that Petitioner had four prior felony offenses and that he was on parole from his last conviction at the time he committed the offense in question. (*Id.*; Petitioner's Brief on Direct Appeal, at 7.)

C.  **Petitioner's Appeal**

Petitioner appealed the conviction, arguing that he was denied the right to counsel of his own choosing and that his sentence was excessive. The Illinois Appellate Court affirmed the conviction on March 29, 2002, finding that the trial court did not abuse its discretion in denying Petitioner's motion for a continuance. (*Id.* at 7.) The court noted that Novit, Petitioner's privately retained counsel, demanded trial on every court date from April 8 to June 29, 1998, and that he indicated his readiness for trial on July 7, 1998 until he discovered that the State's witness was present in court. (*Id.* at 6.) At that point, Novit tried to withdraw from the case, stating that Petitioner's family had hired another lawyer to represent him. Petitioner then claimed that he had fired Novit and hired Puchala on June 8, 1998, though he failed to mention that fact at the June 29,

4

1998 hearing. (*Id.*) After a short recess, Novit informed the court that Puchala was out of town and would not be appearing in court that day. (*Id.*) Based on this record, the Appellate Court held that it was not an abuse of discretion for the trial court to determine that the defense requested a continuance as a delaying tactic, and that "the defense strategy of relying on the inability of the State to secure the witness during the term had failed."[3] (*Id.* at 6-7.)

On October 2, 2002, the Illinois Supreme Court denied Petitioner's petition for leave to appeal. (Petition for Leave to Appeal signed 4/29/02, Exhibit D to Respondent's Answer; *People v. Garcia*, No. 93827, Exhibit E to Respondent's Answer.) *See also People v. Garcia*, 201 Ill. 2d 586, 786 N.E.2d 191 (Table) (2002). Having exhausted his state court remedies on the choice of counsel issue, Petitioner filed a petition for habeas corpus relief with this court on or about November 23, 2004.

## DISCUSSION

Section 2254 of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") entitles a prisoner to a writ of habeas corpus if he is being held pursuant to a state court judgment obtained in violation of the Constitution. 28 U.S.C. § 2254. For claims that were adjudicated on the merits by a state court, a federal court will not grant a writ of habeas corpus unless that state decision (1) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(1) & (2).

A state court's decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this [Supreme] Court on a question of law . . . [or] the state court confronts facts that are materially indistinguishable from a relevant Supreme

---

[3] The Appellate Court also affirmed Petitioner's sentence, but Petitioner has not raised that issue in his habeas petition. (*Garcia*, at 7-8.)

Court precedent and arrives at a result opposite to [that of the Supreme Court]." *Williams v. Taylor*, 529 U.S. 362, 405 (2000). A state court need not cite Supreme Court cases nor even be aware of them in order to demonstrate compliance with federal law, "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). As for the "unreasonable application" inquiry, "a federal habeas court . . . should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams*, 529 U.S. at 409. A court "may not issue a writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id.* at 411.

Petitioner argues that he was deprived of his Sixth Amendment right to counsel of his choice when the trial court denied his request for a continuance to allow time for newly-appointed counsel to appear. (Habeas Petition.) The Sixth Amendment right to counsel does include the right to choice of counsel. *United States v. Harris*, 394 F.3d 543, 552 (7th Cir. 2005). The "essential aim" of the Amendment, however, "is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." *Id.* (citing *Wheat v. United States*, 486 U.S. 153, 159 (1988)). Moreover, the Amendment "does not give the accused the power to manipulate his choice of counsel to delay the orderly progress of his case." *United States v. Robinson*, 20 F.3d 270, 275 (7th Cir. 1994) (quoting *United States ex rel. Kleba v. McGinnis*, 796 F.2d 947, 951-52 (7th Cir. 1986)).

As the Illinois Appellate Court noted, Novit, who represented Petitioner throughout the proceedings, pressed for trial at every court hearing and initially indicated his readiness for trial as scheduled on July 7, 1998. Only upon learning that the State's witness was present to testify, however, did Novit move to withdraw and advise the court that Eric Puchala was actually representing Petitioner. Puchala had filed an appearance at the June 29, 1998 hearing, but he indicated only that he was serving as co-counsel, not that he would be taking over Petitioner's

6

representation. Petitioner said nothing to the contrary until July 7, 1998, when he informed the court for the first time that he had both fired Novit and hired Puchala back on June 8, 1998. The trial court passed the case to allow Novit to locate Puchala, but a recorded message on Puchala's office telephone indicated that he was out of town.

On these facts, the court is satisfied that the state courts reasonably concluded that Petitioner and his counsel were engaging in gamesmanship and that they sought a continuance as a delaying tactic once they found out that the key witness against Petitioner was available to testify. Petitioner denies that he sought a continuance to "thwart the administration of justice," emphasizing that he asked only for "a 24 hour continuance to locate the defendant's newly retained counsel." (Habeas Petition.) As the trial court noted, however, it was not clear why Puchala was out of town or how long he would be away. (*See* Transcript, at C-21 - C-22.) Significantly, there is no evidence that Puchala advised the trial court at the June 29, 1998 hearing that he would be unavailable for the July 7, 1998 trial.

*People v. Washington*, 195 Ill. App. 3d 520, 552 N.E.2d 1067 (1st Dist. 1990), relied upon by Petitioner, is not to the contrary. In *Washington*, the defendant's appointed public defender notified the court on the day of trial that the defendant's "family has retained an attorney for him who asked that the case be set for [the following week]." *Id.* at 522, 552 N.E.2d at 1068. The court summarily denied the continuance, which he viewed as a delaying tactic, and found the defendant guilty of burglary at the conclusion of a bench trial. *Id.* at 522-23, 552 N.E.2d at 1068-69. The defendant appealed the conviction, arguing in part that he had been denied his constitutional right to counsel of choice. The Illinois Appellate Court agreed, finding no indication in the record that the request for a continuance was in fact a delaying tactic. *Id.* at 525, 552 N.E.2d at 1070. The Appellate Court noted that the trial court "did receive a call from the secretary of the private attorney who defendant claimed to have retained," and that the court failed to conduct any inquiry

7

into the defendant's stated reason for requesting the continuance. *Id.* at 525-26, 552 N.E.2d at 1070.

Unlike the trial court in *Washington*, the trial court in this case did appropriately inquire into Petitioner's claim that he had retained new counsel. The court gave Petitioner an opportunity to locate attorney Puchala, but he was out of town and unreachable despite having filed an appearance as co-counsel at the June 29, 1998 hearing and having been present in the courtroom when the July 7 trial date was set. *Cf. Washington*, 195 Ill. App. 3d at 525, 552 N.E.2d at 1070 (noting evidence that the court received a call from the new attorney's secretary). Significantly, at that hearing, Puchala never indicated that he was unavailable for trial on July 7, and Petitioner did not notify the court that he had fired Novit. In light of the fact that Petitioner and Novit raised the matter of Puchala's absence only after they learned that the State's witness was in court to testify, the court reasonably concluded that Petitioner's request for a continuance was merely a delaying tactic. *See also People v. Antoine*, 335 Ill. App. 3d 562, 581-82, 781 N.E.2d 444, 461 (1st Dist. 2002) (affirming denial of request for continuance where the defendant gave conflicting statements as to whether he was going to or had already retained new counsel and there was no evidence that the newly identified attorney was ready, willing, or able to take the case); *People v. Burrell*, 228 Ill. App. 3d 133, 142, 592 N.E.2d 453, 459 (1st Dist. 1992) ("It is within the discretion of the trial court to determine when the defendant's right to select counsel unreasonably interferes with the orderly process of judicial administration.")

Under the circumstances presented, this court might have exercised its discretion to grant Petitioner's request for a continuance of the trial date. On habeas review, however, the court is called upon simply to determine whether the State courts applied the proper standard in assessing Petitioner's request and reached a reasonable conclusion. In this case, that test was met.

## CONCLUSION

For the reasons stated above, the petition for writ of habeas corpus is denied.

ENTER:

Dated: June 3, 2005

REBECCA R. PALLMEYER
United States District Judge